UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
BRENDAN A. HURSON
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-0782
MDD_BAHChambers@mdd.uscourts.gov

May 25, 2023

LETTER TO ALL COUNSEL OF RECORD

Re:     *Charles M. v. Kilolo Kijakazi, Acting Commissioner, Social Security Administration*
        Civil No. 22-2370-BAH

Dear Counsel:

On September 17, 2022, Plaintiff Charles M. ("Plaintiff") petitioned this Court to review the Social Security Administration's ("SSA's" or "Commissioner's" or "Defendant's") final decision to deny his claim for Social Security benefits. ECF 1. This case was then referred to me with the parties' consent. *See* 28 U.S.C. § 636; Loc. R. 301 (D. Md. 2021). I have considered the record in this case (ECF 7) and the parties' dispositive briefs (ECFs 12 and 14). I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2021). This Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will AFFIRM the Commissioner's decision. This letter explains why.

## I.     PROCEDURAL BACKGROUND

Plaintiff filed a Title II application for Disability Insurance Benefits ("DIB") on January 29, 2020, and a Title XVI application for Supplemental Security Income ("SSI") benefits on September 14, 2021, alleging a disability onset of December 8, 2019. Tr. 260–66, 267–92. Plaintiff's claims were denied initially and on reconsideration. Tr. 10, 138–41, 155–57. On October 26, 2021, an Administrative Law Judge ("ALJ") held a hearing. Tr. 57–97. Following the hearing, on December 23, 2021, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act[1] during the relevant time frame. Tr. 7–34. The Appeals Council denied Plaintiff's request for review, Tr. 1–6, so the ALJ's decision constitutes the final, reviewable decision of the SSA. *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000); *see also* 20 C.F.R. § 422.210(a).

## II.    THE ALJ'S DECISION

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The ALJ is required to evaluate a claimant's disability determination

---

[1] 42 U.S.C. §§ 301 et seq.

using a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920. "Under this process, an ALJ evaluates, in sequence, whether the claimant: '(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy.'" *Kiser v. Saul*, 821 F. App'x 211, 212 (4th Cir. 2020) (citation omitted) (quoting *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)).

Here, at step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity . . . since December 8, 2019, the alleged onset date." Tr. 13. At step two, the ALJ found that Plaintiff suffered from the severe impairments of "spine disorder, osteoarthritis, attention deficit-hyperactivity disorder ("ADHD"), obesity, learning disorder, and depression." *Id.* The ALJ also determined that Plaintiff suffered from the non-severe impairments of "substance addiction disorder, right foot deformity, plantar fasciitis, and visual impairment." Tr. 15. At step three, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. 16. Despite these impairments, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can only occasionally climb ramps or stairs. Never able to climb ladders, ropes, or scaffolds. Frequently able to balance. Occasionally able to stoop, kneel, crouch, or crawl. Frequent use of either lower extremity for pushing, pulling, or operation of foot controls. Needs to avoid work at unprotected heights. Able to carry out simple instructions and routine, repetitive tasks. Would need to avoid work requiring a high quota production rate pace (for example, rapid assembly line work where coworkers are side-by-side and the work of one affects the work of the others). Would be able to perform work activities for up to two hours at a time but would then be distracted, causing the individual to be off task. However, time off task could be accommodated with normal breaks. Occasionally able to change activities or work settings during the workday without being disruptive. Occasionally able to deal with changes in a routine work setting.

Tr. 19. The ALJ then determined that Plaintiff was unable to perform any past relevant work but could perform other jobs that existed in significant numbers in the national economy. Tr. 27–28. Therefore, the ALJ concluded that Plaintiff was not disabled. Tr. 28.

### III. <u>LEGAL STANDARD</u>

A disability determination must be affirmed so long as the agency applied correct legal standards and the factual findings are supported by substantial evidence. *Britt v. Saul*, 860 F. App'x 256, 259 (4th Cir. 2021) (citing *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015)). Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)). "It consists of 'more than a mere scintilla of evidence but may be somewhat less than a preponderance.'" *Id.* (quoting *Craig*, 76 F.3d at 589).

IV.     **ANALYSIS**

Plaintiff raises three main arguments on appeal. First, Plaintiff contends that the ALJ erroneously assessed the RFC by: (1) failing to set forth a narrative discussion or function-by-function analysis; (2) failing to explain his determination that Plaintiff could perform work activities for up to two hours at a time; (3) failing to perform an assessment of Plaintiff's ability to sit, stand, walk, or lift; (4) failing to assess certain aspects of two state agency physicians' opinions; (5) failing to explain how Plaintiff could maintain concentration, attention, and pace for 90 percent of the workday despite his moderate limitations in concentration, persistence, and pace ("CPP"); and (6) failing to explain how Plaintiff is capable of performing work-related activities for eight hours per day and five days per week. ECF 12, at 3–15. Second, Plaintiff argues that the ALJ erroneously evaluated his subjective complaints. *Id.* at 15–21. Third, Plaintiff contends that the ALJ "noted [his] abilities to perform minimal daily activities without also considering any limitation upon his ability to perform them, and failed to explain how [his] assertions undermined his subjective complaints and indicated that he would be capable of performing work-related activities eight hours per day, five days per week." *Id.* at 23.

Defendant counters that substantial evidence supports each of the ALJ's mental and physical RFC findings. ECF 14, at 5–17. Defendant further contends that the ALJ properly explained that Plaintiff's subjective complaints were not entirely consistent with other record evidence, and properly considered Plaintiff's daily activities as one factor among others in evaluating Plaintiff's subjective complaints. *Id.* at 17–23.

A.     <u>The ALJ Properly Determined Plaintiff's RFC.</u>

As an initial matter, Plaintiff argues that the ALJ failed to set forth a narrative discussion showing how the evidence supported each of his conclusions. ECF 12, at 6. However, a careful review of the ALJ's decision makes clear that the ALJ set forth a narrative discussion of Plaintiff's medical evidence spanning approximately eight pages and citing to specific evidence in the record. Tr. 19–27. The ALJ also logically explained how this evidence, along with Plaintiff's testimony, the opinions of various physicians, and the state agency medical consultants' assessments, leads to the conclusion that Plaintiff can perform light work with exertional and nonexertional limitations. *Id.* As such, I find that the ALJ's decision contains the requisite "narrative discussion describing how the evidence supports" his conclusions. *Mascio*, 780 F.3d at 636.

Aside from arguing that the ALJ's decision contains no narrative discussion, Plaintiff also takes issue with more specific aspects of the ALJ's RFC determination. First, Plaintiff argues that the ALJ provided no support for the RFC limitation that Plaintiff can "perform work activities for up to two hours at a time, but would then be distracted, causing . . . him to be off task, but that any time off task could be accommodated with normal breaks." ECF 12, at 7 (citing Tr. 19). After the ALJ determined that Plaintiff possessed a moderate limitation in CPP, the ALJ limited him to, among other things, working in two-hour increments with normal breaks. Tr. 19. But, as Plaintiff correctly notes, the ALJ provided no explanation as to why this limitation accounts for Plaintiff's moderate CPP difficulties. Indeed, this Court has recognized that such a limitation, without more, is insufficient to account for a claimant's moderate limitations in CPP because breaks at two-hour

intervals are customary even for those without CPP limitations. *See Richardson v. Berryhill*, No. TJS-17-1523, 2018 WL 11474067, at *3 (D. Md. June 25, 2018) ("The ALJ's finding that [claimant] can perform work in two-hour increments with normal breaks does not adequately account for her ability to concentrate and stay on task."); *Ludlow v. Comm'r, Soc. Sec. Admin.*, No. SAG-15-3044, 2016 WL 4466790, at *2 (D. Md. Aug. 23, 2016) (noting that an ALJ's "restriction to working in 2-hour intervals does not adequately account for a moderate limitation in the ability to stay on task, absent further explanation"); *see id*. (citing Social Security Ruling 96-9p, 1996 WL 374185 (S.S.A. July 2, 1996) for the proposition that "a normal workday includes a morning break, a lunch period, and an afternoon break at approximately 2-hour intervals, and that the occupational base is not eroded where limitations may be accommodated by these regularly scheduled breaks").

Had this been the only limitation in the RFC accounting for Plaintiff's CPP difficulties, Plaintiff's argument may have been persuasive. But such is not the case here. While the RFC did not adequately account for Plaintiff's moderate CPP difficulties by limiting him to working in two-hour increments—a customary aspect of work even for those *without* CPP limitations—the RFC *did* account for Plaintiff's CPP issues by precluding him from working at "a high quota production race pace (for example, rapid assembly line work where coworkers are side-by-side and the work of one affects the work of the others)." Tr. 19. This Court has found that such a limitation adequately accounts for a Plaintiff's moderate CPP difficulties. *See, e.g.*, *Gair v. Comm'r, Soc. Sec. Admin.*, No. SAG-14-3652, 2015 WL 5774982, at *2 (D. Md. Sept. 28, 2015) (concluding that an ALJ's limitation to "no strict production quotas" adequately accounted for moderate limitations in CPP because the limitation compensated for "any time that [the claimant] would be off-task due to his limited ability to stay focused").

"Pursuant to *Mascio*, once an ALJ has made a step three finding that a claimant suffers from moderate difficulties in [CPP,] the ALJ must either include a corresponding limitation in her RFC assessment, or explain why no such limitation is necessary." *Talmo v. Comm'r, Soc. Sec.*, No. ELH-14-2214, 2015 WL 2395108, at *3 (D. Md. May 19, 2015), *report and recommendation adopted* (D. Md. June 5, 2015). Here, the ALJ included such a limitation in the form of a production rate restriction, and Plaintiff does not argue that this limitation is inadequate. As such, remand is not warranted based upon the inadequacy of other limitations.

With respect to Plaintiff's physical limitations, Plaintiff argues that the ALJ erroneously concluded that he could perform light work without making findings regarding Plaintiff's ability to sit, stand, walk, or lift. ECF 12, at 9–11. Pursuant to SSA regulations, light work involves:

> lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. §§ 404.1567(b), 416.967(b). Plaintiff contends that the ALJ's failure to assess these functions was harmful because, had Plaintiff been limited to sedentary work, he would have been found disabled. ECF 12, at 10–11. But a careful review of the ALJ's decision reveals that the ALJ afforded these functions adequate consideration. For instance, the ALJ considered Plaintiff's walking and standing abilities by noting that, while Plaintiff "testified he cannot walk or stand very long," medical records indicated "that recently he stated he could walk for 60 minutes and stand for 20 minutes." Tr. 21 (citing Tr. 1938); *see also id.* ("On examination in August 2019, [Plaintiff] was noted to have normal muscle strength, station, and gait, with minimal pain with hyperextension and lateral rotation of the lumbar spine and over the lumbar paravertebral musculature and grossly intact sensation." (citing Tr. 1635)), Tr. 16 (noting that Plaintiff testified to using a cane but was "noted being able to walk to a doctor's appointment 'with no assistive device'" (quoting Tr. 1082)). The ALJ also took note of Plaintiff's ability to "sit in one position for about 30 minutes[.]" Tr. 19. Additionally, the ALJ noted Plaintiff's ability to lift a maximum of five to ten pounds, *id.*, and evaluated a prior administrative finding which noted that Plaintiff engaged in weightlifting. Tr. 25 (citing Tr. 111–135). Given this analysis, I am satisfied that the ALJ adequately supported his finding that Plaintiff could perform light work with no additional limitations regarding sitting, standing, walking, or lifting.

Plaintiff also takes issue with the ALJ's evaluation of the opinions of Dr. P. May and Dr. D. Bunkley, two physicians who evaluated Plaintiff's mental limitations. ECF 12, at 11–13 (citing Tr. 24–25). Specifically, Plaintiff avers that the ALJ omitted "any reference to" the physicians' findings that Plaintiff "had learning, mood, and anxiety symptoms that would result in occasional interruptions of focus and work pace." *Id.* at 11 (citing Tr. 132). But, contrary to Plaintiff's assertion, the ALJ noted that Drs. May and Bunkley found Plaintiff to have "only mild limitations" in CPP and noted that he considered this finding unpersuasive. Tr. 24 (citing Tr. 98–108, 111–35); *see also* Tr. 132 (noting, under a direction to "[e]xplain in narrative form the sustained concentration and persistence capacities and/or limitations," that Plaintiff "has learning, mood and anxiety symptoms that would result in occasional interruptions of focus and work pace"). As such, while the ALJ's decision did not reproduce the exact phrase identified by Plaintiff, the discussion and accompanying citation make clear that the ALJ did, in fact, consider this evidence.

Plaintiff further argues that the ALJ "failed to set forth any explanation as to how he determined that an individual with moderate limitations in [CPP] would be capable of maintaining[] concentration, attention, and pace for 90 percent of the workday." ECF 12, at 13. Plaintiff's argument appears to conflate the vocational expert's testimony with the ALJ's decision. At the hearing, the vocational expert testified that being off-task for more than 10 percent of a workday would "typically" be work-preclusive. Tr. 92. But Plaintiff's argument fails because the ALJ's decision does not include any finding that Plaintiff would be off task for a specific period of time. In fact, as Plaintiff acknowledges, the ALJ concluded that Plaintiff's "time off task could be accommodated with normal breaks." ECF 12, at 6 (citing Tr. 19). Moreover, the ALJ was not required to make a finding regarding time off-task. *See, e.g.*, *Kane v. Comm'r, Soc. Sec. Admin.*, No. SAG-17-1252, 2018 WL 2739961, at *2 n.2 (D. Md. May 14, 2018) ("[A]n ALJ is not required to determine a percentage of time off-task, and can simply consider whether a claimant has the

ability to sustain work over an eight-hour workday."). The ALJ's failure to explain a determination that he did not make does not warrant remand.

Plaintiff also contends that the ALJ "failed to explain how [he] would be capable of sustaining work-related activities eight hours per day, five days per week." ECF 12, at 14. However, the ALJ was not required to do so. As Social Security Ruling ("SSR") 96-8p explains, the "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." 1996 WL 374184, at *1 (S.S.A. July 2, 1996). Accordingly, this Court has recognized that because "an RFC determination implicitly contains a finding that [a] plaintiff is able to work an eight-hour work day, the ALJ's failure to explicitly state that as part of the RFC is immaterial." *Adrienne P. v. Kijakazi*, No. BPG-22-358, 2023 WL 2407394, at *3 (D. Md. Jan. 6, 2023) (finding that an ALJ's failure to address a claimant's "ability to perform work-related activities eight hours per day, five days per week" did not warrant remand). Accordingly, because I find that the ALJ adequately evaluated Plaintiff's RFC for the reasons stated above, this argument is also unavailing.

Lastly, because the ALJ's RFC determination was supported by substantial evidence for the reasons stated above, Plaintiff's contention that the ALJ "failed to properly perform" a function-by-function assessment of his work-related abilities is unavailing. ECF 12, at 6. The Fourth Circuit has held that a *per se* rule requiring remand when the ALJ does not perform an explicit function-by-function analysis "is inappropriate given that remand would prove futile in cases where the ALJ does not discuss functions that are 'irrelevant or uncontested.'" *Mascio*, 780 F.3d at 636 (4th Cir. 2015) (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) (per curiam)). Rather, remand is only required "where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Id*. (quoting *Cichocki*, 729 F.3d at 177). Because no such circumstance is present in the instant case for the reasons explained above, the lack of an explicit function-by-function analysis does not warrant remand.

  B.  <u>The ALJ Properly Considered Plaintiff's Subjective Complaints.</u>

Plaintiff next raises a series of specific challenges to the following section of the ALJ's decision, which evaluates Plaintiff's subjective complaints:

> As for the location, duration, frequency, and intensity of the claimant's symptoms, for example: as for his physical impairments, he testified his back was injured at work. However, he admitted he never filed any worker's compensation claims. The record shows that MRI of the lumbar spine performed in late 2015 showed improvement and flattening out of the previous disc herniation at L4-5 from 2010 (Exhibit 17F at p. 4). He repeatedly denied any weakness or fatigue (Exhibits 19F at p. 17; 24F at pp. 6, 8). Although he testified he has right leg pain 3–4 times a week, the record shows that recently, he stated it had been over 6 months since having the right lower extremity symptoms (Exhibit 24F at p. 61). He repeatedly stated that his right leg pain was improving (Exhibit 23F at pp. 7, 31). In mid-

> March 2021, he stated that his right leg pain had improved since losing weight, and he denied recent episodes of right leg pain (Exhibit 2F at p. 15). Venous Doppler of the right leg was normal in mid-June 2021 (Exhibit 6F at p. 20). Although he testified he cannot walk or stand very long, the records shows [sic] that recently he stated he could walk for 60 minutes and stand for 20 minutes (Exhibit 24F at p. 61). He further stated that his sleep was not affected by his back symptoms (Exhibit 24F at p. 62). He denied lack of coordination, back pain, tender points, or decreased strength (Exhibit 19F at p. 17). He repeatedly denied any numbness or tingling (Exhibits 2F at p. 16, 19F at p. 17). On examination in August 2019, he was noted to have normal muscle strength, station, and gait, with minimal pain with hyperextension and lateral rotation of the lumbar spine and over the lumbar paravertebral musculature and grossly intact sensation (Exhibit 19F at p. 17). In early July 2020, he denied any concerns other than increased anxiety (Exhibit 27F at p. 27).

Tr. 21; *see* ECF 12, at 15–16. Plaintiff's challenges to this analysis are without merit. First, Plaintiff contends that his failure to file a worker's compensation claim, his ability to sleep, and his denial of weakness and fatigue have no bearing upon his symptoms, so the ALJ should not have considered them as part of the symptoms analysis. ECF 12, at 16, 18. This contention misses the mark—a careful reading of the ALJ's discussion suggests that the ALJ merely noted that these aspects of Plaintiff's testimony cast doubt upon his having sustained a back injury. Tr. 21. Plaintiff also contends that the ALJ failed to mention that his 2015 MRI showed "possible nerve root contact." ECF 12, at 16. But, given that the ALJ discussed other results from this MRI elsewhere in the decision, it appears clear that the ALJ considered Plaintiff's 2015 MRI as a whole. *See* Tr. 15 ("MRI of the lumbar spine showed bilateral L4-5 facet arthropathy with effusions in both joints. The claimant underwent bilateral lumbar facet blocks.") (citing Tr. 1285–91).

Plaintiff further argues that the ALJ mischaracterized various treatment records in assessing his subjective complaints. First, Plaintiff avers that the ALJ erroneously stated that Plaintiff "denied" right lower extremity symptoms for six months and that Plaintiff's right lower extremity pain was improving. ECF 12, at 16–17. But this contention is belied by a careful review of the record. *See* Tr. 1974 (noting that Plaintiff had not experienced symptoms related to his right lower extremity in six months). Plaintiff is correct that the ALJ does not comprehensively recount Plaintiff's bending, straightening, and flexion abilities with respect to his right lower extremity. ECF 12, at 16. But the ALJ's discussion and corresponding record citations indicate that these records were adequately considered and, in any event, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision[.]" *Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014) (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam)).[2] Plaintiff also contends that the ALJ erred in noting that "on July 8, 2020,[] Plaintiff

---

[2] Despite his disagreement with the ALJ's characterization of evidence regarding his right lower extremity symptoms, Plaintiff acknowledges that the evidence of record suggests a "minuscule improvement" in his pain level. ECF 12, at 17.

only complained of anxiety[.]" ECF 12, at 18. Plaintiff is incorrect; this statement is supported by the record evidence. *See* Tr. 2062 (noting that Plaintiff "reports that . . . his anxiety has increased [but that he] has no further concerns at this time").

Plaintiff also contends that the ALJ's findings regarding his denial of recent leg pain, ability to walk for 60 minutes, and ability to stand for 20 minutes, are at odds with the evidence of record. ECF 12, at 17–18. I disagree. Each of these findings is supported by relevant record evidence. *See* Tr. 798 (noting that Plaintiff "denies recent episodes of right leg pain [and] [s]tates [that] right leg pain has improved since lossing [sic] the weight."), 1938 (noting that, in May 2021, Plaintiff's "better [l]imit[s]" for walking and standing were 60 and 20 minutes, respectively).

Certainly, Plaintiff disagrees with the ALJ's conclusions regarding how the evidence should be weighed against his subjective complaints. However, "[t]his court does not reweigh evidence or make credibility determinations in evaluating whether a decision is supported by substantial evidence; '[w]here conflicting evidence allows reasonable minds to differ,' we defer to the Commissioner's decision." *Fiske v. Astrue*, 476 F. App'x 526, 527 (4th Cir. 2012) (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam)). Given this, Plaintiff's argument that these complaints were erroneously evaluated is without merit.

      C.      <u>The ALJ Properly Considered Plaintiff's Activities of Daily Living.</u>

Lastly, Plaintiff contends that the ALJ erred by failing to explain how Plaintiff's activities of daily living "undermined [Plaintiff's] assertions" regarding his subjective complaints and his ability to work eight hours per day and five days per week. ECF 12, at 19. I disagree. Plaintiff does not specify the complaints to which he refers. Nonetheless, I find that the ALJ adequately connected his discussion of Plaintiff's daily activities to his conclusion regarding the persuasive value of Plaintiff's symptoms-related statements. For instance, the ALJ took note of Plaintiff's yard work, travel by foot, driving, and shopping, as well as inconsistencies between the record and Plaintiff's testimony regarding his exercise habits.[3] Tr. 21. Accordingly, the ALJ concluded that "Plaintiff's statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in [the] decision."[4] Tr. 20.

---

[3] Specifically, the ALJ noted that Plaintiff's testimony that he "has not exercised at all since he stopped working at BJ's" was belied by records showing that Plaintiff exercised after that time. Tr. 21. Plaintiff avers that the ALJ "failed to consider that . . . the references in the record to 'exercise' were references to [his] prescribed Home Exercise Program." ECF 12, at 23 (citations omitted). But he does not explain how the ALJ's failure to describe the exercise as "prescribed" was harmful.

[4] Plaintiff contends that the ALJ did not "consider[] any limitation" that Plaintiff had in performing these activities. ECF 12, at 23. But the ALJ did, in fact, take note of such limitations. *See, e.g.*, Tr. 20 ("He used to use an elliptical machine to exercise but has not used the elliptical machine since he stopped working at BJ's. He has problems with prolonged standing and sitting and needs

*Charles M. v. Kijakazi*
Civil No. 22-2370-BAH
May 25, 2023
Page 9

      Thus, the ALJ's decision builds an "accurate and logical bridge" from Plaintiff's daily activities and complaints to the ALJ's conclusions. *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018). Because it does so, the ALJ need not have explicitly rationalized any alleged inconsistency between Plaintiff's activities and the implicit conclusion that Plaintiff can work eight hours per day for five days per week. As discussed above, such a finding is an inherent component of an ALJ's RFC finding and need not be addressed where, as here, the RFC has been properly assessed. *See Adrienne P.*, 2023 WL 2407394, at *3.

### V.    CONCLUSION

      For the reasons set forth herein, the SSA's judgment is AFFIRMED pursuant to sentence four of 42 U.S.C. § 405(g). The clerk is directed to CLOSE this case.

      Despite the informal nature of this letter, it should be flagged as a Memorandum Opinion. A separate implementing Order follows.

      Sincerely,

      /s/

      Brendan A. Hurson
      United States Magistrate Judge

---

to get up after sitting for 5–10 minutes because his back will 'lock up.'").